A04A0526. STRICKLAND v. THE STATE.
(605 SE2d 890)

ELDRIDGE, Judge.

This case is here on remand from the Supreme Court of Georgia. A Stephens County jury found Keldon Strickland guilty of trafficking in cocaine, misdemeanor possession of marijuana, obstruction of an officer, and operating a vehicle without a valid license tag. On appeal, Strickland's sole claim of error was that the trial court erred in denying his motion to suppress because the drugs at issue were found pursuant to a stop of his vehicle at a roadblock that did not serve a legitimate primary purpose.[1] While this issue was not dispositive of Strickland's case because the facts showed that he stopped his car before he reached the roadblock,[2] we utilized the opportunity pre-sented by Strickland's enumerated error to discuss the propriety of a

---

[1] *Strickland v. State*, 265 Ga. App. 533 (594 SE2d 711) (2004).

[2] See, e.g., *Gary v. State*, 268 Ga. App. 773 (603 SE2d 304) (2004) (legality of a roadblock need not be considered when evidence shows that defendant was not stopped at the roadblock).

roadblock established solely for the purpose of a generalized investigation of a neighborhood crime, as opposed to purposes specifically related to ensuring highway safety or securing an international border. In so doing, we declined to suspend "the usual requirement of individualized suspicion where the police seek to employ a checkpoint primarily for the ordinary enterprise of investigating crimes."[3] Our determination appeared firmly grounded since, as the United States Supreme Court had previously held,

> We have never approved a checkpoint program whose primary purpose was to detect evidence of ordinary criminal wrongdoing. Rather, our checkpoint cases have recognized only limited exceptions to the general rule that a seizure must be accompanied by some measure of individualized suspicion. We suggested in [*Delaware v. Prouse*, 440 U. S. 648, 663 (99 SC 1391, 59 LE2d 660) (1979)], that we would not credit the "general interest in crime control" as justification for a regime of suspicionless stops. Consistent with this suggestion, each of the checkpoint programs that we have approved was designed primarily to serve purposes closely related to the problems of policing the border or the necessity of ensuring roadway safety.[4]

We did at the same time, however, note that this issue was being revisited by the United States Supreme Court in *Illinois v. Lidster*, 202 Ill. 2d 1, 9, 779 NE2d 855 (Ill. 2002), cert. granted, 538 U. S. 1012 (123 SC 1928, 155 LE2d 847) (2003), and that our holding may be altered if "the higher courts direct otherwise."[5] *Illinois v. Lidster* has been decided.[6] The Supreme Court of Georgia has remanded this case expressly for reconsideration of our above-referenced roadblock analysis in light of *Lidster*.

The roadblock at issue was erected for the purpose of investigating a homicide which had occurred in Toccoa at a residence located in the Pond and Franklin Streets area. GBI Agent Attaway testified at the suppression hearing that the officers' efforts included,

> stop[ping] people walking on the roads and stop[ping] people traveling by right in that general area to see if somebody

---

[3] *Strickland v. State*, supra at 537, citing *City of Indianapolis v. Edmond*, 531 U. S. 32, 44 (121 SC 447, 148 LE2d 333) (2000).

[4] (Citations and punctuation omitted.) *City of Indianapolis v. Edmond*, supra at 41-42.

[5] *Strickland v. State*, supra at 537.

[6] *Illinois v. Lidster*, 540 U. S. 419 (124 SC 885, 157 LE2d 843) (2004).

might have saw something, or heard a gunshot, or something of that nature. And that's what we were there for. Was everybody that came through the Pond Street area and the Franklin Street area either walking or driving in a car we were asking them did you hear anything, were you in this area last week.

The goal for stopping individuals "was to attempt to identify additional leads that would might [sic] identify who's responsible for the death of [the victim]." Under *Lidster*, it would appear that the primary purpose of this roadblock passes constitutional muster. While an individualized suspicion of wrongdoing is absent per *Edmond*, the *Edmond* case was distinguished by the *Lidster* Court as follows:

> *Edmond* does not govern the outcome of this case. In *Edmond*, this Court held that, absent special circumstances, the Fourth Amendment forbids police to make stops without individualized suspicion at a checkpoint set up primarily for general "crime control" purposes. Specifically, the checkpoint in *Edmond* was designed to ferret out drug crimes committed by the motorists themselves. Here, the stop's primary law enforcement purpose was *not* to determine whether a vehicle's occupants were committing a crime, but to ask the occupants, as members of the public, for help in providing information about a crime in all likelihood committed by others.[7]

Of course, looking too closely at this analysis may cause one to question how wrongdoing by a third party can authorize the stop/detention of a citizen's vehicle. Or to question the legal basis for an initially involuntary stop of a motorist in order to seek voluntary help. The *Lidster* Court posits that "citizens will often react positively when police simply ask for their help as responsible citizens to give whatever information they may have to aid in law enforcement";[8] however, this might appear to be more wishful thinking than fact-based when, as in this case, "simply asking for help" entails stopping a motorist at midnight to make such request. And, in any event, this viewpoint certainly gives short shrift to those citizens — responsible vel non — who may *not* react positively to having their cars stopped for information that nothing indicates they possess; indeed, when the focus

---

[7] (Emphasis in original.) *Lidster*, supra, 157 LE2d 843, 848.

[8] (Citation and punctuation omitted.) Id. at 851.

shifts to what "responsible" citizens should be willing to endure as opposed to what law enforcement is constitutionally authorized to impose, some might suspect the Fourth Amendment has taken a hit. But, *Illinois v. Lidster* has been decided, and thereunder, it appears that the general investigative roadblock in this case served a "legitimate primary purpose." Strickland's sole enumeration of error to the contrary was without merit, and the denial of his motion to suppress was proper.

*Judgment affirmed. Adams, J., concurs. Ruffin, P. J., concurs in judgment only.*

DECIDED OCTOBER 27, 2004.

Motion to suppress. Stephens Superior Court. Before Judge Woods.

*Sanders & Smith, Joshua D. Huckaby*, for appellant.

*Michael H. Crawford, District Attorney, Deborah S. Wilbanks, Assistant District Attorney*, for appellee.